AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

FILED
Aug 06 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ ClaudiaCarranza  DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. **2:24-mj-8680**
Black Apple iPhone )
Model: 12 )
Seized as FP& F: 2024255200009201 Item: 0002 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the __Southern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Fernando Quiroz incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Fernando Quiroz*
Applicant's signature

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by __telephone__ *(specify reliable electronic means)*.

Date: __08/06/2024__

*Judge's signature*

City and state: __El Centro, California__   HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**      Black Apple iPhone
            Model:  12
            Seized as FP& F: 2024255200009201 Item: 002
            Seized from Pedro Fabian MANZANARES-Serrano
            **(Target Device #1)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 30, 2024, up to and including July 31, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Fernando Quiroz, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**  Black Apple iPhone
Model:  12
Seized as FP& F: 2024255200009201 Item: 002
Seized from Pedro Fabian MANZANARES-Serrano
**(Target Device #1)**

**A-2:**  Black LG Cellphone
Model:  K51
Seized as FP& F: 2024255200009201 Item: 003
Seized from Karlo FLORES-Martinez
**(Target Device #2)**

**A-3:**  Blue Samsung Cellphone
Model: Galaxy S10e
Seized as FP& F: 2024255200009201 Item: 004
Seized from Dionicio ARREDONDO-Morales
**(Target Device #3)**

as further described in Attachments A-1 to A-3, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Pedro Fabian MANZANARES-Serrano (MANZANARES) and Karlo FLORES-Martinez (FLORES) for transportation of illegal aliens Dionicio ARREDONDO-Morales (ARREDONDO) and Paulina BASILIO-Mendoza (BASILIO) (collectively, the "Material

1

Witnesses"), in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from MANZANARES, FLORES and the Material Witnesses on or about July 30, 2024, incident to the arrest of MANZANARES, FLORES and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the Immigration and Naturalization Act (INA), training in Titles 8, 18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in

telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

   a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

   c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

4

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On July 29, 2024, Border Patrol Agents - Intelligence assigned to the El Centro Sector Intelligence Anti-Smuggling Unit Group #2 (ASU) were conducting surveillance in Calexico, California. On this date, at approximately 7:30 p.m., Supervisory Border Patrol Agent (SBPA-I) M. Clinton was checking the town of Holtville for criminal activity. SBPA-I M. Clinton observed a white Ford Expedition (Ford) bearing California license plates parked on Holt Avenue in Holtville, California. SBPA-I M. Clinton observed that the driver of the Ford, later identified as MANZANARES, was sitting in the driver's seat on his cellphone. SBPA-I M. Clinton noticed that this vehicle was the only car parked in the area with an occupant inside. It should be noted that ASU Agents have interdicted several alien smuggling loads where the driver waited in Holtville, California prior to picking up his human cargo.

11. Upon observing the Ford, SBPA-I M. Clinton notified additional ASU Agents of his observation and initiated static surveillance on the Ford. Additional ASU Agents travelled to the area and positioned their unmarked service vehicles in and around the area and kept constant visual on the Ford as well as MANZANARES as he remained in the driver's seat of the Ford. At approximately 10:20 p.m., while ASU Agents were still conducting static surveillance on the Ford, the Calexico Border Patrol Station Remote Video Surveillance System (RVSS) operator broadcasted over the Calexico East radio

frequency that they observed three individuals walking northbound, away from the United States/Mexico International Boundary Fence (IBF) south of Interstate 8, east of the Brocks Research Center Drive Exit.

12. As the RVSS operator broadcasted their observations, the Ford began travelling south towards 5th Street (which turns into Highway 115). As the Ford began travelling southbound on Highway 115 towards Interstate 8, ASU Agents informed the RVSS operators as well as the Calexico Border Patrol Agents working in the area that they were conducting mobile surveillance on the Ford and that they believed the Ford was travelling to the eastbound lanes of Interstate 8 to pick up the three suspected illegal aliens.

13. RVSS operators watched as the three individuals entered the All-American Canal and swam north across the canal. As the three suspected illegal aliens exited the All-American Canal on the northside, the Ford merged onto the eastbound lanes of Interstate 8. RVSS operators kept constant visual on the three suspected illegal aliens while ASU Agents continued mobile surveillance on the Ford as it continued travelling eastbound on Interstate 8 towards the Brock Research Center Road Exit.

14. ASU Agents kept constant visual on the Ford as it travelled past the Brock Research Center Road Exit and continued travelling eastbound towards the Imperial Sand Dunes Rest Area. The Ford entered the rest area and merged back onto the westbound lanes of Interstate 8. As the Ford passed the Brock Research Center Road Exit, RVSS operators informed ASU Agents that the three suspected illegal aliens ran across Interstate 8 and concealed themselves in the brush on the northside of the westbound lanes of Interstate 8.

15. ASU agents again positioned their unmarked service vehicles behind the Ford and watched as it travelled westbound on Interstate 8 to the area where the three suspected illegal aliens were hiding, slowed down and pulled over and came to a complete stop. As the Ford stopped, ASU agents watched it begin to flash its headlights multiple times before slowly travelling westbound on the shoulder towards the three suspected illegal aliens. At

this time, RVSS operators continued to monitor the Ford as it slowly travelled westbound while the three suspected illegal aliens emerged from the brush and ran to the Ford. As the suspected illegal aliens ran to the Ford, the Ford came to a complete stop. Once at the Ford, the three suspected illegal aliens opened the passenger door and entered the Ford. After all, three suspected illegal aliens were inside of the Ford, the Ford merged back onto the westbound lanes of Interstate 8 and began travelling westbound.

16. ASU Agents again positioned their unmarked service vehicles behind the Ford and kept constant visual on the Ford as it travelled to the parking lot of T-Mobile, in Calexico, California. As the Ford came to a complete stop, ASU agents observed one individual, later identified as FLORES, exit driver side rear passenger of the Ford and begin walking towards the Walmart. Based on training and experience, ASU Agents firmly believed that the Ford had dropped off FLORES because he was a foot-guide in the smuggling event. At this time, ASU Agents split up to continue surveillance on the Ford and FLORES.

17. ASU Agents who continued surveillance on FLORES watched as he walked through the Walmart parking lot, walked southbound across Cole Road and entered the 7-Eleven convenience store in Calexico, California. At this time, ASU Agents believed that FLORES was going to continue walking south to the Calexico West Port of Entry and return to Mexico. ASU agents requested a Calexico Border Patrol Agent in full rough duty uniform to assist with a consensual encounter with FLORES in the 7-Eleven to perform an immigration inspection on FLORES.

18. Border Patrol Agent (BPA) S. Swiatkowski travelled to the 7-Eleven and approached FLORES while he was inside the store. BPA S. Swiatkowski identified himself as a BPA and questioned FLORES as to his citizenship. FLORES freely admitted to being a citizen of Mexico, illegally present in the United States. FLORES admitted he made the illegal entry by climbing the border fence or by walking through an area other than through

a designated Port of Entry. FLORES was placed under arrest. ASU Agents informed additional ASU Agents who were still conducting mobile surveillance on the Ford that FLORES was indeed an illegal alien.

19. ASU Agents who were conducting surveillance on the Ford kept constant visual on the Ford as it travelled northbound towards Highway 78. ASU Agents firmly believed that MANZANARES was utilizing this route of egress to travel out of the Imperial Valley to Los Angeles, California. As the Ford continued travelling northbound on Highway 115 towards Highway 78, BPA-I H. Torres positioned his unmarked service vehicle behind the Ford and activated the emergency lights and sirens to conduct a vehicle stop and perform an immigration inspection on MANZANARES and the additional suspected illegal aliens.

20. After BPA-I H. Torres activated the emergency lights and sirens, the Ford slowed down, pulled over and came to a complete stop. BPA-I H. Torres approached the Ford with Border Patrol markings and insignia fully visible, identified himself as a BPA and questioned MANZANARES as to his citizenship. MANZANARES stated that he was a citizen of Mexico and a Lawful Permanent Resident. BPA-I H. Torres then questioned the two suspected illegal aliens, later identified as Dionicio ARREDONDO-Morales (ARREDONDO) and Paulina BASILIO-Mendoza (BASILIO) as to their citizenship. Both ARREDONDO and BASILIO admitted to being a citizen of Mexico, illegally present in the United States. ARREDONDO and BASILIO admitted they made the illegal entry by climbing the border fence or by walking through an area other than through a designated Port of Entry. MANZANARES, ARREDONDO and BASILIO were placed under arrest and were transported to the Calexico Border Patrol Station for processing.

21. During a post-Miranda interview, FLORES stated that he is a citizen and national of Mexico without any travel or immigration documents that would allow him to enter, be in or remain legally in the United States. FLORES stated he previously tried to

guide a group of illegal immigrants into the United States but was not successful and returned to Mexico. FLORES stated he works for a smuggler in Mexicali. FLORES stated he gets paid 250 dollars for each illegal immigrant he crosses and guides.

22. FLORES stated today he was instructed by the smuggler to cross a group of two, guide them to Interstate 8, and wait for a load vehicle. FLORES stated he was using his cellphone to coordinate with the smuggler and share his live location with the WhatsApp application. FLORES stated he was called by the smuggler who informed them that they would be picked up by an Explorer. FLORES stated all three got in the back seat of the Explorer and were driven away. FLORES stated that after 15 minutes, he was asked by the male driver if he would stay with the group or get dropped off in Calexico. FLORES stated he chose to be drooped at the Calexico Walmart parking lot. FLORES stated the Explorer kept the two illegal immigrants he guided and continued to an unknown destination. FLORES stated he was given an option by the smuggler of staying in the United States or going back to Mexico to get paid $250 U.S. dollars for each illegal immigrant he guided.

23. Material Witness ARREDONDO stated he is a citizen of Mexico. ARREDONDO stated he does not have any legal documents allowing him to live, work or remain in the United States legally. ARREDONDO stated he traveled to Mexicali, Baja California about four days ago via bus. ARREDONDO stated he made arrangements with an unknown smuggler in his hometown of Culiacan, Mexico to be illegally smuggled into the United States and pay around $6,000 United States dollars. ARREDONDO stated his destination was Los Angeles, California to work in construction.

24. During a search incident to arrest of MANZANARES, FLORES, and the Material Witnesses, three cell phones were found: a black Apple iPhone (Target Device #1) was found on MANZANARES' person by BPA H. Torres and MANZANARES claimed ownership of this phone. A black LG cellphone (Target Device #2) was found on

9

1  FLORES' person and FLORES claimed ownership of this phone. A blue Samsung
2  cellphone (Target Device #3) was found on ARREDONDO's person and ARREDONDO
3  claimed ownership of this phone. All cell phones were seized as evidence.
4      25.    I am aware that smuggling conspiracies require planning to successfully evade
5  detection by law enforcement.  In my professional training and experience, this may require
6  planning and coordination in the days and weeks prior to the event.  Additionally, co-
7  conspirators are often unaware of the subject's arrest and will continue to attempt to
8  communicate with the subject after the arrest to determine their whereabouts.  Given this,
9  I respectfully request permission to search the Target Devices for data beginning on June
10 30, 2024, up to and including July 31, 2024, the day after the arrest of MANZANARES,
11 FLORES and the Material Witnesses.

## METHODOLOGY

26.    It is not possible to determine merely by knowing the cellular telephone's make, moel and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic

hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

27. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

28. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//
//
//

11

# CONCLUSION

29. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that MANZANARES, FLORES, and the Material Witness used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by MANZANARES, FLORES, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Fernando Quiroz*
Fernando Quiroz Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 6th day of August, 2024.

_____ 11:37 a.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

12

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**    Black Apple iPhone
Model: 12
Seized as FP& F: 2024255200009201 Item: 002
Seized from Pedro Fabian MANZANARES-Serrano
**(Target Device #1)**

 

The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**        Black LG Cellphone
            Model:  K51
            Seized as FP& F: 2024255200009201 Item: 003
            Seized from Karlo FLORES-Martinez
            **(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**          Blue Samsung Cellphone
                 Model: Galaxy S10e
                 Seized as FP& F: 2024255200009201 Item: 004
                 Seized from Dionicio ARREDONDO-Morales
                 (Target Device #3)



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-3 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 30, 2024, up to and including July 31, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.